# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MARSHA SCOTT and VICKI HARGIS,
individually and on behalf of similarly
situated persons,

         *Plaintiffs*,

vs.

                                        Case No. 08-4045-EFM

RAUDIN MCCORMICK, INC. et al.,

         *Defendants.*

## MEMORANDUM AND ORDER

In this action, Plaintiffs' claim unpaid wages and overtime in violation of federal law. Plaintiffs were employed as drivers for Defendants, where their duties required them to transport railroad company crews to various locations. Prior to taking these trips, Plaintiffs were required to perform certain pre- and post-trip vehicle inspections for which they claim they received no compensation. Plaintiffs also claim that they were required to attend mandatory safety meetings and submit to random drug testing, often when they were off-duty, for which they also were not compensated. Plaintiffs allege that the Defendants' conduct violated the Fair Labor Standards Act (FLSA).[1]

---

[1] 29 U.S.C. § 201 *et seq.*

On August 27, 2008, the Court conditionally certified this case as a collective action pursuant to 28 U.S.C. § 216(b) of the FLSA. As a result of conditional class certification, a Notice of Pendency of Collective Action Lawsuit ("Notice") was sent to putative class members, informing them in part of the deadline to opt-in and the effect of joining the suit, after which 1,548 individuals opted into this action. Thereafter, on August 6, 2010, the Court struck the opt-in notices of fourteen Plaintiffs who untimely filed their notices for this action, and dismissed an additional 706 opt-in Plaintiffs for failing to respond to any of Defendants' discovery requests.[2] Defendants now move for partial summary judgment, asserting that the evidence establishes that 138 employees who opted into this action never worked in excess of forty hours, and therefore, were not eligible for overtime under the FLSA. Further, Defendants assert that 275 Plaintiffs who did work overtime hours were always paid for that overtime, and thus, they have no valid claim under the FLSA. Defendants also move for summary judgment on certain Plaintiffs' claims, arguing they are time barred. The Court will address each in turn.

## I. Background

Plaintiffs are past and current employees of Defendants Raudin McCormick, Inc., J.L.S., Inc, and/or Browns Crew Car of Wyoming, Inc. Railcrew Xpress, L.L.C., also a party to this action, is the holding company of these three defendants (herinafter "Corporate Defendants").[3] Defendants W. Scott Boyes and David R. Lyn (hereinafter "Individual Defendants") are parties to this action in their individual and official capacities as President and Vice President of Corporate Defendants, respectively.

---

[2]Doc. 533.

[3]Railcrew Xpress was the former holding company of the three corporate defendants and has been dissolved.

Corporate Defendants contract with federally regulated railroads to provide motor vehicle transportation services for rail crews and their equipment. To meet their contractual obligations with these railroads, Corporate Defendants employed Plaintiffs as drivers to work in one of three capacities: yard driver, radius driver, and long haul driver. A yard driver drives almost exclusively within a terminal area, but may in some instances be required to drive a short distance outside of the terminal area. Yard drivers are compensated by an hourly rate of pay.

In contrast to yard drivers, radius drivers are responsible for longer trips that often require them to cross state lines. Radius drivers, however, are typically limited to trips within 60 miles of the terminal area. Radius drivers are also compensated by an hourly rate of pay. Long haul drivers normally drive long-distance trips, with the majority of such trips requiring drivers to travel interstate. The length of each trip, however, varies depending on the particular rail carrier's requirements. Long haul drivers are paid by both an hourly rate of pay for what Plaintiffs refer as non-driving activities, and a per-mile rate for driving time. Defendants contend that for each individual trip, a minimum rate of $12.50 is paid regardless of the trip's distance. Defendants also claim that on occasion, a long haul driver may drive a yard shift, in which case the driver is paid an hourly rate, and similarly, yard and radius drivers may drive a long distance trip, and are paid on a per-mile basis. Defendants claim that during each driver's interview for employment, this pay scheme is discussed and agreed to by the employee.

As part of the drivers' responsibilities, Defendants require pre- and post-trip inspections of the vehicles. As part of these inspections, the drivers are required to complete an inspection checklist, which notes the condition of approximately 15 specific items concerning the vehicle's equipment and safety gear. Plaintiffs contend that such inspection was required to be completed by

such time that the drivers were available to pick up the crew members at the scheduled times. Frequently, Plaintiffs suggest this requirement necessitated that the inspection be completed prior to or after the employee's assigned shift. On completing a trip, long haul drivers are required to "close out" their trip, which requires contacting one of Defendants' dispatchers and providing certain information concerning the details of the trip. These details include the driver's name and run number, authorization number, trip times, wait times, and odometer readings. Drivers are also required to refuel and clean their vehicles at the close of their shift.

In addition to their driving duties, Plaintiffs were required to attend meetings, which they characterize as "safety meetings," that included information relating to their jobs, work safety, and anti-union discussions. Plaintiffs were also required to submit to random drug testing as part of their employment, which was at times conducted after they were relieved of duty. Plaintiffs allege that Defendants conduct in not paying wages and overtime for work performed violated the FLSA.

## II. Summary Judgment Standard

The Court is familiar with the standards governing the consideration of Summary Judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[4] An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[5] A fact is "material" if, under the applicable substantive law, it is "essential

---

[4]Fed. R. Civ. P. 56(c).

[5]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003).

to the proper disposition of the claim.[6]  In considering a motion for summary judgment, the Court must examine all of the evidence in a light most favorable to the nonmoving party.[7]

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to summary judgment.[8]  The moving party is not required to disprove the nonmoving party's claim or defense, but must only establish that the factual allegations have no legal significance.[9]  If this initial burden is met, the nonmovant must then set forth specific facts showing that there is a genuine issue for trial.[10]  In doing so, the opposing party may not rely on mere allegations or denials in its pleadings, but must present significant admissible probative evidence supporting its allegations.[11]  The Court is also cognizant that it may not make credibility determinations or weigh the evidence when examining the underlying facts of the case.[12]

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[13]

---

[6]*Id.*

[7]*Harrison v. Wahatoyas, LLC*, 253 F.3d 552, 557 (10th Cir. 2001).

[8]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[9]*Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

[10]*Celotex*, 477 U.S. at 323.

[11]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

[12]*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[13]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### III. Analysis

a.  ***Defendants' Claim that Plaintiffs either failed to work in excess of forty hours in any seven-day workweek or were paid for all overtime worked***

Defendants assert that the time records of 138 opt-in Plaintiffs reveal that they never worked overtime hours while employed with Defendants. Further, Defendants contend that the pay records of an additional 275 opt-in Plaintiffs who did work in excess of forty hours always received pay at a time-and-a-half rate for those additional hours worked. As a result, Defendants claim they are entitled to summary judgment as to these Plaintiffs' claims. Plaintiffs do not dispute Defendants' assertions.

Under the FLSA, an employer is generally required to pay its employees at a rate of one and one-half times their regular rate of pay for time worked in excess of forty hours per workweek.[14] An employer, however, is not required to pay overtime to employees when they have worked less than forty hours in any given workweek.[15] Here, Plaintiffs do not contest Defendants' assertion that the 138 opt-in Plaintiffs, as identified in their Exhibit 6,[16] did not work more than forty hours in any given workweek during their employment with Defendants. Further, Plaintiffs do not dispute Defendants' claim that the additional 275 opt-in Plaintiffs, as identified in Defendants' Exhibit 7,[17] received one and one-half times their regular pay for any hours worked in excess of forty hours per workweek. Therefore, these individuals' claim for overtime pay under the FLSA fails. Accordingly, Defendants are entitled to summary judgment with respect to these opt-in Plaintiffs.

---

[14]29 U.S.C. § 207(a)(2); *see also Christensen v. Harris County*, 529 U.S. 576, 578-79 (2000).

[15]*See* 29 U.S.C. § 207(a)(2).

[16]Doc. 519-16.

[17]Doc. 519-17.

### b. *Statute of Limitations*

Defendants move for summary judgment on Plaintiffs' claim that Defendants' conduct in violating the FLSA was willful, thereby invoking a three-year statute of limitations. Defendants contend that because they made a good faith attempt to comply with their FLSA obligations, Plaintiffs' claims are governed by a two-year statute of limitations rather than a three-year limitation. As a result, Defendants argue that a number of opt-in Plaintiffs' claims are time barred. An action for unpaid overtime compensation under the FLSA may be commenced within two years after the cause of action accrued, unless the cause of action was the result of a willful violation.[18] In that case, the action may be commenced within three years after the cause of action accrued.[19]

Whether an FLSA violation is willful is a mixed question of law and fact.[20] "The standard for willful violations is whether the employer 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA].' "[21] The burden of establishing that an employer acted willfully in violating the FLSA rests with the employee.[22] To defeat summary judgment, Plaintiffs' evidence must be sufficient to create a genuine issue of material fact as to whether Defendants "either knew or showed reckless disregard for the matter of whether [their] conduct was

---

[18]29 U.S.C. § 255(a).

[19]*Id.*

[20]*Reich v. Monfort, Inc.*, 144 F.3d 1329, 1334 (10th Cir. 1998) (citing *Reich v. Newspapers of New England, Inc.*, 44 F.3d 1060, 1079 (1st Cir. 1995)).

[21]*Pabst v. Okla. Gas & Elec. Co.*, 228 F.3d 1128, 1137 (10th Cir. 2000) (citing *Monfort*, 144 F.3d at 1334 (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988))).

[22]*Underwood v. NMC Mortg. Corp.*, 2009 WL 1269465, at *8 (D. Kan. May 6, 2009); *see also McLaughlin*, 486 U.S. at 135.

prohibited by [the FLSA]."[23]

Defendants contend that the evidence clearly demonstrates that they acted in good faith to determine their obligations under the FLSA and to comply with those requirements. Defendants first argue that they repeatedly assessed their compliance with FLSA guidelines through communications with U.S. Department of Labor ("DOL") officials in 2005 and 2007, where in each case they were informed there were no violations. Defendants further argue that the DOL conducted two formal investigations whereby the DOL, in 2008, indicated that Defendants were exempt from the FLSA's overtime requirements. Defendants admit that after receiving complaints of overtime violations, the DOL conducted an investigation of its San Antonio, Texas facility in 2006, after which the DOL determined that certain long haul drivers were entitled overtime pay. Defendants claim that because these long haul drivers did not driver interstate at least once every ninety days, they were not exempt under federal law, and thus, the DOL determined these drivers were entitled to pay. Defendants assert that, in addition, they consulted with three different attorneys regarding FLSA requirements, which each advised that Defendants were exempt from following those requirements. Defendants contend that because they made a good faith effort to determine whether their pay processes were either in compliance with or exempt from the FLSA, their conduct cannot be determined willful, entitling them to summary judgment on this issue.

Plaintiffs contend that because there remains disputed issues of fact, the issue of whether Defendants' actions were willful must be submitted to the jury. Plaintiffs argue that Defendants were twice cited by the DOL for not paying overtime to employees in 2006, and that those investigations and resulting citations are proof that Defendants were aware of their FLSA

---

[23]*McLaughlin*, 486 U.S. at 133.

obligations but nonetheless willfully chose to ignore them.[24]

Plaintiffs concede that they chose to take no depositions in this matter. Instead, Plaintiffs assert that they chose to rely on documents that would provide objective evidence on what was communicated during investigations and between individuals providing opinions to Defendants regarding their position on this issue. However, through discovery, Plaintiffs determined that Defendants failed to preserve such documentation. Nonetheless, Plaintiffs assert that certain of Defendants' documentary evidence is suspect. Specifically, Plaintiffs argue that a DOL investigation into Defendants' Tennessee operations, which concluded in February 2008 and found no violations, was based on the fact that Defendants' drivers operated commercial motor vehicles. Plaintiffs assert that Defendants have provided no proof that they operated commercial motor vehicles, and accordingly, claim that Defendants' predicate to obtaining that particular DOL opinion was false. Plaintiffs further contend that emails exchanged between Defendant Boyes and others concerning the prior 2006 investigations further proves he, and therefore all Defendants, were aware of their obligations under the FLSA.

After reviewing the record, we are not convinced that sufficient evidence exists to permit a rational fact finder to conclude that Defendants' conduct was willful. It is Plaintiffs' burden to demonstrate that Defendants either knew or had a reckless disregard of whether their conduct violated the FLSA.[25] It is not enough that Plaintiffs' evidence may demonstrate that Defendants at some point had knowledge of FLSA's provisions, but it must prove that Defendants knew that their failure to pay overtime under the facts of this case violated those provisions. As Defendants

---

[24]Defendants argue that the two violations Plaintiffs refer are in actuality the one violation concerning their San Antonio facility.

[25]*McLaughlin*, 486 U.S. at 133.

concede, the DOL investigated complaints concerning Defendants' failure to pay overtime to certain drivers from its San Antonio, Texas facility. Defendants assert, through Defendant Boyes' declaration, that these violations related specifically to their long haul drivers who operated Defendants' vehicles intrastate rather than interstate. As a result, Defendants claim these drivers were not exempt from being paid overtime. Emails and other documents submitted by Defendants support this position, and Plaintiffs have provided no documentary evidence nor any other type of evidence to support a contrary finding. The evidence demonstrates that Defendants took steps, through both communications with the DOL and through obtaining a legal opinion concerning the FLSA's application to Defendants' pay policies, to determine whether they were required to pay overtime to their employees. Based on this information, Defendants eliminated their overtime policy. "If an employer acts reasonably in determining its legal obligation, its action cannot be deemed willful,"[26] nor will a finding of willfulness be based merely on negligent conduct or on a good-faith, albeit incorrect belief that its conduct was in compliance with the FLSA.[27] Therefore, we conclude that Plaintiffs evidence is insufficient to create a genuine issue of material fact as to whether Defendants knew or recklessly disregarded that its conduct was in violation of the FLSA.[28] As a result, Defendants are entitled to summary judgment on the issue of willfulness, and thus, their

[26]*Id.* at 135 n.13.

[27]*See id.* at 133.

[28]Plaintiffs also argue that because Defendants failed to plead the defense of reliance as required by 29 U.S.C. § 259, they are precluded from arguing that they relied on the DOL opinion. Plaintiffs' argument, however, is without merit. Section 259 provides that "no employer shall be subject to any liability . . . on account of the failure of the employer to pay minimum wages or overtime compensation under the [FLSA] . . . if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of [the DOL]". 29 U.S.C. § 259(a). This statutory provision acts to completely bar a plaintiff's claims if an employer meets the requirements of this provision. In this case, Defendants are not pleading a defense under this provision to completely bar Plaintiffs' claims, but rather, are using the DOL opinions to demonstrate that they acted in good faith, and not willfully, in implementing their wage and overtime policies. Therefore, this statutory provision is not applicable to the instant case.

motion is granted. Accordingly, Defendants' alleged violations of the FLSA are subject to the general two-year statute of limitations.[29]

### c. *Application of Section 306(b) of the Technical Corrections Act*

Defendants move for summary judgment on all of Plaintiffs' FLSA claims that arose between August 10, 2005 and August 9, 2006, claiming that their liability is limited for FLSA Section 7 violations for this time period. Section 7 of the FLSA requires an employer subject to its provisions to compensate its employees engaged in commerce for a workweek longer than forty hours at a rate not less than one and one-half times the regular rate of the employee's compensation.[30] However, certain exemptions exist that, under certain circumstances, allows an employer to require that an employee work greater than forty hours per workweek without requiring that employer to pay overtime. The Motor Carrier Act ("MCA") provides one such exemption.[31]

The MCA Exemption exempts from the FLSA's overtime provisions "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49."[32] Section 31502 provides the Secretary of Transportation with the authority to "prescribe requirements for qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier."[33] The MCA's general limitation on jurisdiction limits the Secretary's authority, in pertinent

---

[29]*See McLaughlin*, 486 U.S. at 133.

[30]29 U.S.C. § 207(a)(1).

[31]*See* 49 U.S.C. § 10501(a), 13503(b)(1) & (2).

[32]29 U.S.C. § 213(b)(1).

[33]49 U.S.C. § 31502 (b)(1).

part, to transportation in interstate commerce.[34]

Prior to 2005, the MCA defined a motor carrier as "a person providing motor vehicle transportation for compensation."[35] However, on August 10, 2005, Congress amended the definition of "motor carrier" through the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (SAFETEA-LU), by replacing "motor vehicle" with "commercial motor vehicle (as defined in section 31132)."[36] Under section 31132, a "commercial motor vehicle" means, in pertinent part, a motor vehicle used on public highways in interstate commerce so long as the motor vehicle has a gross vehicle weight of at least 10,001 pounds and is designed to transport more than eight passengers, which includes the driver.[37] As a result of this amendment, motor carriers operating vehicles of 10,000 pounds or less designed to transport eight or less passengers were no longer exempt from paying their employees overtime under the FLSA.

On June 6, 2008, Congress enacted the SAFETEA-LU Technical Corrections Act (TCA), whereby it once again amended the definition of "motor carrier," returning it to its pre-SAFETEA-LU state, to mean "a person providing motor vehicle transportation for compensation."[38] This amendment would appear, on its face, to once again exempt from the FLSA's overtime provisions an employee of a motor carrier while operating a motor vehicle of 10,000 pounds or less designated to transport eight or less passengers when operated in interstate commerce. However, through

---

[34]*Id.* § 13501; *Tews*, 592 F. Supp. 2d at 1343.

[35]49 U.S.C. § 13102(12) (2002).

[36]*Tews*, 592 F. Supp. 2d at 1343 (citing Pub. L. No. 109-59, § 4142(a), 119 Stat. 1747 (2005) (codified as amended at 49 U.S.C. § 13102(14))).

[37]49 U.S.C. § 31132(1).

[38]Tews, 592 F. Supp. 2d at 1346 (citing Pub. L. No. 110-244, § 305(c), 122 Stat. 1620 (2008) (codified as amended at 49 U.S.C. § 13102(14))).

Section 306 of the TCA, the overtime provisions of the FLSA continue to apply to an individual employed by a motor carrier whose work is defined, in part, as a driver affecting the safety of operations of a motor vehicle weighing less than 10,000 pounds and designed to transport 8 or less passengers, including the driver. Thus, this section of the TCA effectively eliminates the MCA Exemption for drivers of non-commercial motor vehicle.[39]

Section 306(b) of the TCA limits an employer's liability for FLSA Section 7 violations for those violations occurring in the one-year period beginning on August 10, 2005, the enactment of the SAFETEA-LU, if the employer lacked actual knowledge that it was subject to Section 7 of the FLSA with respect to an employee covered by the act.[40] Thus, to defeat summary judgment on claims arising within this one-year time period, Plaintiffs must show that Defendants had actual knowledge of their obligations to pay overtime based as a result of the SAFETEA-LU/TCA amendments.[41]

Defendants claim that they were unaware of changes to the SAFETEA-LU until after they requested a legal opinion from Jeremy Kahn, a Washington, D.C. attorney. Defendants further claim that discovery has uncovered no evidence showing that they knew of the SAFETEA-LU provisions before August 9, 2006, and in fact, assert that Plaintiffs' counsel was even unaware of the change until they filed their first amended complaint in May 2008. As a result, Defendants contend that they are entitled to summary judgment on all FLSA claims arising between August 10, 2005 and August 9, 2006, pursuant to Sections 206(a) and (c) of the TCA.

---

[39]*See* Technical Corrections Act, Pub. L. No. 110-244, § 306(a), (c), 122 Stat. 1572 (2008).

[40]*Id.* § 306(b), 122 Stat. 1608, 1620-21 (2008).

[41]*See Brooks v. Halsted Commc'ns, Ltd.*, 620 F. Supp. 2d 193, 198 (D. Mass. 2009).

Plaintiffs do not dispute that their counsel did not become aware of the changes to the SAFETEA-LU until May 2008; however, they assert that this fact is irrelevant, as their lack of awareness has no connection to Defendants' knowledge of the relevant SAFETEA-LU provisions. Plaintiffs also argue that the lack of documentation for the basis of Mr. Kahn's opinion prevents them from determining the exact dates of Defendants' actual or constructive knowledge. Regardless, Plaintiffs "propose that Defendants had constructive, if not actual, knowledge" of the SAFETEA-LU "or at least the revisions it made to the wage and hour laws as early as February 2006," based on Mr. Kahn's opinion, wherein he stated: "Mr. Tressler advise [sic] me that the Corporate Defendants' "Long Haul" drivers, who were paid on a miles-driven basis, were not legally entitled to and had never received overtime compensation at RCX or anywhere else in the rail crew transportation industry."[42] Plaintiffs further contend that two investigations by the DOL, one in February 2006 and another in June 2006, placed Defendants on notice of their overtime obligations "whether they knew of SAFETEA-LU or not."[43] Plaintiffs' arguments, however, are unpersuasive. The statute plainly requires that Defendants have actual knowledge, which is direct and clear knowledge, that they were subject to Section 7 of the FLSA as a result of the SAFETEA-LU amendment, not simply constructive knowledge. Plaintiffs, admittedly, have no evidence to prove that Defendants had this actual knowledge. Accordingly, Defendants are entitled to summary judgment for overtime claims arising between August 10, 2005 and August 9, 2006.

---

[42]Doc. 527, p.30 (Plaintiffs' Response to Defendants' Motion).

[43]*Id.* at p.32.

### d.    *Untimely Claims*

Defendants first claim that Plaintiffs who were terminated more than two years before opting into this action have no timely claims because of the two-year statute of limitations, and therefore, these Plaintiffs must be dismissed. Because the Court has granted summary judgment on the statute of limitations period, as discussed in Section b *supra*, we similarly grant summary judgment here. Accordingly, those Plaintiffs who were terminated more than two years before opting into this action, as identified in Defendants' Exhibit 8 to this motion,[44] have no viable claim under the FLSA, and are, therefore, dismissed from this action.

Defendants further move for summary judgment with respect to those Plaintiffs who were terminated prior to August 9, 2006 (as identified in Defendants' Exhibit 9),[45] as these Plaintiffs' claims are outside the time period barred from consideration by Section 306(b) of the TCA. Plaintiffs only argument in response is that Defendants' request to dismiss these Plaintiffs is premature, because the Court must decide the issue of whether Defendants had "actual or constructive" knowledge of their obligations under the SAFETEA-LU and/or the TCA before it determine whether these Plaintiffs may be dismissed. Having already determined that Defendants are not liable for any overtime for the period from August 10, 2005 through August 9, 2006, the Court concludes that those Plaintiffs that were terminated prior to August 9, 2006, as identified in Defendants' Exhibit 9 to their motion, have no viable claims under the FLSA. Accordingly, Defendants are entitled to summary judgment with respect to these Plaintiffs' claims.

---

[44]Doc. 519-18.

[45]Doc. 519-19.

e.      *Application of Rail Carrier Exemption to Employees Predominantly Working in Terminal Areas*

Defendants contend that, based on the Court's prior ruling concerning the FLSA's Terminal Area Exception, they are entitled to summary judgment on all claims for those opt-in Plaintiffs who are yard drivers or otherwise predominantly work or worked in the terminal areas.  In addition, Defendants assert that in the Pretrial Order, the parties stipulated that due to the "terminal area exemption" contained in 49 U.S.C. § 13503(b), drivers who drive only in yard service are exempt from the requirement to be paid overtime compensation.[46]  The parties further stipulated that members of the class that are employed in yard service generally make a series of short runs and they rarely depart the terminal area.[47]  Thus, Defendants suggest summary judgment in their favor is warranted.

Plaintiffs agree that Defendants' recitation of the Court's prior ruling on summary judgment is accurate, but argues that the Court's ruling is not supportable under well established law and suggests that the Court reconsider that ruling.  Further, Plaintiffs contend that the only reason they stipulated to certain facts in the Pretrial Order was due to the Court's conclusions regarding the parties' prior summary judgment motions.  Rather than addressing Defendants' assertions, Plaintiffs reargue their position that the terminal area exception does not bar any of their claims, relying on essentially the same or very similar case law as previously relied and discussed in their prior summary judgment motion to support their position.  The Court issued its Order regarding the FLSA's terminal area exception on October 30, 2009, and while Plaintiffs filed a Motion to Reconsider that Order, issues relating to the terminal area exception were not raised in that motion.

[46]Doc. 508, ¶ 4, § 16 (Pretrial Order).

[47]*Id.* § 20.

Plaintiffs have not provided the Court with any argument to convince us to reconsider this issue at this time. Therefore, to the extent that the Court would construe Plaintiffs' Response as a Second Motion for Consideration, it is denied.

Because Plaintiffs have not controverted Defendants' assertions that the 213 opt-in Plaintiffs, as identified in Defendants' Exhibit 10,[48] are yard drivers who drove the majority of their time in terminal areas, the Court finds that pursuant to the FLSA's terminal area exception, these opt-in Plaintiffs were not entitled to overtime pay. Additionally, the Court finds that those opt-in Plaintiffs, as identified in Defendants' Exhibit 3,[49] who have identified themselves as being predominantly terminal area drivers, are also not entitled to overtime pay. Accordingly, Defendants are entitled to summary judgment with respect to these Plaintiffs' claims.

### f.   *Motor Carrier Exemption as applied to Commercial Motor Vehicles*

Defendants contend that because the Motor Carrier Exception continues to exempt those opt-in Plaintiffs who drive commercial motor vehicles, they are entitled to summary judgment on these Plaintiffs' claims. A covered employee under the FLSA is an individual employed by a motor carrier whose work is defined, in whole or in part, as a driver affecting the safety of operations of a motor vehicle weighing less than 10,000 pounds and designed to transport eight or less passengers, including the driver.[50] Defendants argue that through discovery, they identified seventy-eight Plaintiffs who admitted that they predominantly operated for Defendants a "shuttle van," defined in the interrogatories as "a vehicle that weighs at least 10,001 pounds or that was designated or used

---

[48]Doc. 519-20.

[49]Doc. 519-4.

[50]Technical Corrections Act, Pub.L. No. 110-244, § 306(c).

to transport more than 8 persons."[51]  Defendants assert that as drivers of commercial motor vehicles, these Plaintiffs are not eligible for overtime under the FLSA, and therefore, judgment against their claims is required.

Plaintiffs first argue that Defendants' request to dismiss these Plaintiffs is both overreaching and fails to conform to DOL regulation.  Plaintiffs argue that for an employee to be exempt from overtime in a given workweek, that employee must engage in activity that enables regulation by the Secretary of Transportation, such as jobs involving safety.  Plaintiffs suggest that, in this case, that activity would include driving a "shuttle van" as defined by Defendants in the interrogatories, which certain opt-in Plaintiffs have admitted to driving.  However, Plaintiffs contend that for those workweeks where these same Plaintiffs drove vehicles that do not qualify as commercial motor vehicles, i.e., not "shuttle vans," they are not exempt from overtime pay.  Thus, Plaintiffs claim that the opt-in Plaintiffs identified in Defendants' Exhibit 4 remain entitled to overtime pay for the workweeks in which they did not operate commercial motor vehicles.  Plaintiffs' arguments, however, are unconvincing.

As the Tenth Circuit Court of Appeals has explained, the effect of the MCA exemption relates to the character of an employee's activities rather than the proportion of either that employee's time or activities that determines the exemption's scope.[52]  Here, although these opt-in Plaintiffs may not have driven commercial motor vehicles, and thus be subject to the MCA exemption one-hundred percent of the time, they could have actually driven in such manner had those driving assignments been available.  These opt-in Plaintiffs, as admitted through their

---

[51]Defendants also refer to these "shuttle vans" in their motion as commercial motor vehicles.

[52]*See Starrett v. Bruce*, 391 F.2d 320, 323 (10th Cir. 1968).

interrogatory responses, predominantly drove vehicles meeting the definition of a commercial motor vehicle, and if they would have received assignments to drive those vehicles one-hundred percent of the time, clearly would have accepted those assignments. Thus, simply because an employee primarily tasked to operate commercial motor vehicles is not assigned to drive during a particular workweek does not remove that driver from the MCA's exemption.[53]   Accordingly, with the exception of those opt-in Plaintiffs discussed below, those opt-in Plaintiffs who indicated in interrogatory question 9 that they were drivers of "shuttle vans," as that term was defined in the interrogatories, are exempt from overtime pay.

Plaintiffs also argue that the term "shuttle van," as used in Defendants' interrogatories, is a term of art normally associated with the type of job the employee held, not to the type of vehicle that was actually driven. As a result, Plaintiffs claim that the use of the term "shuttle van" in the interrogatory caused confusion that resulted in these opt-in Plaintiffs answering that they drove commercial motor vehicles, when in fact, the vehicles they drove during their employment were non-commercial motor vehicles (carried only eight or less passengers). Defendants dispute any confusing effect of the interrogatories, arguing that Plaintiffs' counsel had a role in the development of the interrogatories, and at no time did they object to the definition of "shuttle van" or the wording of the specific interrogatories. Defendants further argue that Plaintiffs' counsel had the opportunity to clarify these opt-in Plaintiffs' interrogatory responses, but failed take any initiative to do so until Defendants filed the instant motion. As a result, Defendants contend that the Court should accept these opt-in Plaintiffs' interrogatory answers as submitted – that they operated vehicles that meet the definition of commercial motor vehicles, and thus, are exempt from receiving overtime pay.

_____

[53]*See id.*

Plaintiffs have provided declarations from eleven of the seventy-eight opt-in Plaintiffs who answered in interrogatory 9 that they drove "shuttle vans." In these declarations, these Plaintiffs claim that they were confused by interrogatory question and clarified that they only drove vans that carried eight or fewer passengers and did not drive "shuttle vans" as that term is defined in the interrogatories. While the Court is confused as to why Plaintiffs' counsel failed to address this potential issue with these opt-in Plaintiffs prior to submitting their interrogatory responses to Defendants, we are not inclined to grant summary judgment with respect to their claims at this time. It appears, at least with respect to the eleven opt-in Plaintiffs submitting declarations, that they may have been unclear as to the term "shuttle van" for purposes of responding to interrogatory 9. As such, based on these opt-in Plaintiffs' clarification, Defendants' are not entitled to summary judgment on their claims. However, with respect to the remaining sixty-seven opt-in Plaintiffs, the Court cannot conclude, absent a declaration or affidavit indicating the contrary, that they were similarly confused when responding that they predominantly drove a "shuttle van" for Defendants. Therefore, with the exception of opt-in Plaintiffs Lysa Castillo, Michael Gardner, Edward Gates, Jerry Haynes, Harvey Implom, Charles Jones, Ruth Moore, Gus Morehead, James Morrison, Larry J. Murphy, Gary Norton, James Parmenter, Beth Rodak, and Kevin Schmidt, the Court concludes that Defendants are entitled to summary judgment with respect to those opt-in Plaintiffs' claims as identified in Defendants' Exhibit 4.[54]

---

[54]See Doc. 519-5.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Partial Summary Judgment

(Doc. 518) is hereby GRANTED in part, and DENIED in part.

**IT IS SO ORDERED.**

Dated this 7th day of September, 2010.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE