# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

MARSHA SCOTT and VICKI HARGIS,
individually and on behalf of similarly
situated persons,

    *Plaintiffs*,

vs.

RAUDIN MCCORMICK, INC. et al.,

    *Defendants.*

Case No. 08-4045-EFM

## MEMORANDUM AND ORDER

In this action, Plaintiffs[1] claim unpaid wages and overtime in violation of federal law. Plaintiffs were employed as drivers for Defendants where their duties required them to transport railroad company crews to various locations. Prior to taking these trips, Plaintiffs allege they were required to perform certain pre-trip and post-trip vehicle inspections for which they claim they received no compensation. Plaintiffs also claim that they were required to attend mandatory safety meetings and submit to random drug testing, often when they were off-duty, for which they also were not compensated. Plaintiffs contend that Defendants' conduct violated the Fair Labor Standards Act (FLSA).[2]

---

[1]The Court will refer to the named Plaintiffs and the opt-in Plaintiffs collectively as "Plaintiffs."

[2]29 U.S.C. § 201 *et seq.*

On August 27, 2008, the Court conditionally certified this case as a collective action pursuant to 28 U.S.C. § 216(b) of the FLSA. As part of that certification, the Court authorized that notice be sent to individuals falling within the class description to provide them with the opportunity to opt into the litigation. Approximately 1,500 consents to join were received. As a result of this Court's rulings on other previously filed motions, however, approximately 400 opt-in Plaintiffs[3] remain.[4] Now before the Court is Defendants' Motion to Decertify the Class. On November 22, 2010, the Court held an hearing in which the parties presented argument concerning decertification of the class. For the reasons below, the Court grants the motion.

**I. Background**

Plaintiffs are past and current employees of Defendants Raudin McCormick, Inc., J.L.S., Inc, and/or Browns Crew Car of Wyoming, Inc. Railcrew Xpress, L.L.C., also a party to this action, is the holding company of these three defendants (herinafter "Corporate Defendants").[5] Defendants W. Scott Boyes and David R. Lyn are parties to this action in their individual and official capacities as President and Vice President of Corporate Defendants, respectively.

Corporate Defendants contract with federally regulated railroads to provide motor vehicle transportation services for rail crews and their equipment. To meet their contractual obligations with these railroads, Corporate Defendants employed Plaintiffs as drivers to work in one of three capacities: yard driver, radius driver, and long haul driver. A yard driver drives almost exclusively

---

[3]The number of remaining opt-in plaintiffs was an estimation represented to the Court by the parties during the November 22, 2010 hearing concerning Defendants' Motion to Decertify. Neither party was able to provide the Court with a specific number of the current number of opt-in plaintiffs eligible for the class.

[4]Also as a result of the Court's prior rulings, Plaintiffs' counsel informed the Court during the decertification hearing that the named representatives are no longer viable members of this action, and counsel is working on finding replacement representatives.

[5]Railcrew Xpress was the former holding company of the three corporate defendants and has been dissolved.

within a terminal area, but may in some instances be required to drive a short distance outside of the terminal area. Yard drivers are compensated by an hourly rate of pay.[6]

In contrast to yard drivers, radius drivers are responsible for longer trips that often require them to cross state lines. Radius drivers, however, are typically limited to trips within 60 miles of the terminal area. Radius drivers are also compensated by an hourly rate of pay. Long haul drivers normally drive long-distance trips, with the majority of such trips requiring drivers to travel interstate. The length of each trip, however, varies depending on the particular rail carrier's requirements. Long haul drivers are paid by both an hourly rate of pay for what Plaintiffs refer as non-driving activities, and a per-mile rate for driving time. Defendants contend that for each individual trip, a minimum rate of $12.50 is paid regardless of the trip's distance. Defendants also claim that on occasion, a long haul driver may drive a yard shift, in which case the driver is paid an hourly rate, and similarly, yard and radius drivers may drive a long distance trip, and are paid on a per-mile basis.

Both prior to and after a trip, Defendants require their drivers to complete a vehicle inspection. As part of these inspections, drivers are required to complete an inspection checklist, which notes the condition of approximately 15 specific items concerning the vehicle's equipment and safety gear. Plaintiffs contend that such inspection was required to be completed in sufficient time so that they were available to pick up the rail crew members on schedule. Frequently, Plaintiffs suggest this requirement necessitated that the inspection be completed prior to or after the

---

[6]In its Order on Defendants' Motion for Partial Summary Judgment, the Court ruled that yard drivers, when providing services within a terminal area, were exempt under the terminal area exemption of the FLSA. This decision took into account the parties' assertion that some yard drivers may have at times been required to drive outside the terminal area in a radius driver capacity. The Court, however, made no decision as to the amount of time a driver was required to work outside the terminal area to fall outside of the FLSA exemption. *See Scott v. Raudin McCormick, Inc.*, 2009 WL 3561301, at *4-6 (D. Kan. Oct. 30, 2009).

employee's assigned shift. On completing a trip, long haul drivers are required to "close out" their trip, which requires contacting one of Defendants' dispatchers and providing certain information concerning the details of the trip. These details include the driver's name and run number, authorization number, trip times, wait times, and odometer readings. Drivers are also required to refuel and clean their vehicles at the close of their shift.

In addition to their driving duties, Plaintiffs were required to attend meetings, which they characterize as "safety meetings," that included information relating to their jobs, work safety, and anti-union discussions. Plaintiffs were also required to submit to random drug testing as part of their employment, which was at times conducted after they were relieved of duty.

Defendants now move the Court to decertify the class, arguing that because of the disparate factual and employment policies affecting each individual Plaintiff, distinct proof as to each individual Plaintiff is required to determine whether any particular Plaintiff may be a member of the class. Therefore, Defendants contend that decertification of the class is required.

## II. Standard

The FLSA requires employers to compensate its employees engaged in commerce for a workweek longer than forty hours at a rate not less than one and one-half times the regular rate of the employee's compensation.[7] Section 216(b) of the Fair Labor Standards Act of 1938 provides for an opt-in class action where the complaining employees are "similarly situated."[8] The Tenth Circuit has approved a two-step approach in determining whether plaintiffs are "similarly situated" for

---

[7] 29 U.S.C. § 207(a)(1).

[8] 29 U.S.C. § 216(b).

purposes of Section 216(b).⁹ Under this approach, a court typically makes an initial "notice stage" determination of whether plaintiffs are "similarly situated."¹⁰ That is, the district court determines whether a collective action should be certified for purposes of sending notice of the action to potential class members.¹¹ For conditional certification at the "notice stage," a court "require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.¹² The standard for certification at the notice stage, then, is a lenient one.¹³ The Court has already performed this step and conditionally certified the class.

It is at the close of discovery that the Court revisits the class certification issue and utilizes a more strict standard to determine whether the plaintiffs are "similarly situated," which requires the evaluation of several factors.¹⁴ These factors include: (1) the disparate factual and employment settings of individual plaintiffs; (2) the various defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations.¹⁵ This second step is generally prompted by a motion to decertify the class.¹⁶ Defendants seek to decertify the conditional

---

⁹*See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001).

¹⁰*See id.* at 1102 (citing *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)).

¹¹*See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir . 1995).

¹²*See Thiessen*, 267 F.3d at 1102 (quoting *Vaszlavik*, 175 F.R.D. at 678). At the initial stage, a court may consider affidavits and declarations provided in support of a plaintiff's allegations when deciding whether to grant conditional class certification. *Renfro v. Spartan Computer Servs.*, 243 F.R.D. 431, 432 & n.1 (D. Kan. 2007).

¹³*See Thiessen*, 267 F.3d at 1103; *see also Brooks v. BellSouth Telecomms, Inc.*, 164 F.R.D. 561, 568 (N.D. Ala. 1995) (certification decision at the notice stage is usually based only on the pleadings and any affidavits which have been filed and, thus, the standard is fairly lenient and typically results in conditional certification of a representative class).

¹⁴*Renfro*, 243 F.R.D. at 432.

¹⁵*Id.*

¹⁶*Gieseke v. First Horizon Home Loan Corp.*, 408 F. Supp. 2d 1164, 1166 (D. Kan. 2006).

class, and thus, the Court is now at the second step.

## III. Analysis

### 1. *Disparate Factual and Employment Settings of the Individual Plaintiffs*

Defendants contend that because numerous questions require distinct proof concerning individual Plaintiffs, they are not similarly situated, and as a result, the Court must decertify the class. Defendants argue that in this case, an employee's job title does not accurately describe that employee's duties or even their type of pay, because discovery provided by various individual opt-in Plaintiffs demonstrates that some drivers have been given other driving and management duties, and have received additional compensation for additional duties. Defendants further argue that because Plaintiffs drove in different driving categories, only one category of which is exempt under the FLSA, an individualized review of each Plaintiff, consisting of a day-by-day, and shift-by-shift analysis, is required to determine whether any particular Plaintiff is similarly situated with the both the representative Plaintiffs and other opt-in Plaintiffs so as to be viable members of the class.

Plaintiffs contend that determining class members is not as complex a process as Defendants assert. Plaintiffs argue that the Court must first make certain legal determinations common to all Plaintiffs that would permit the parties to identify the proper members of the class. Plaintiffs assert that these legal questions concern the average mileage area for a terminal area, and whether an employee who works in both exempt and non-exempt positions in a given work week is or is not exempt under the FLSA for that particular week. To answer these questions, Plaintiffs suggest that the Court adopt a "20% rule" that they claim is prevalent in the Code of Federal Regulations, which suggests that if a employee drives more than 20% of a given workweek in a non-exempt position, all time for that week is deemed non-exempt. Plaintiffs further assert that the Court should

determine that an average mileage area for a terminal area of 25 miles should apply to this case. After making these findings, Plaintiffs argue that identifying the members of the class becomes a fairly easy mathematical calculation based on the average miles driven, which is data provided by Defendants.

In addition to the foregoing, Defendants argue that there are additional factual disparities between the Plaintiffs that warrant decertification of the class. Defendants assert that through discovery, some opt-in Plaintiffs claimed that they did not receive overtime pay; however, others disclosed that they did receive pay for the overtime they worked, while yet others indicated they received some pay for some overtime, but not for all hours worked. With regard to training, some opt-in Plaintiffs stated they were required to attend training sessions for which they were not compensated, while others admit that they were never required to attend any mandatory training sessions. In addition, other opt-in Plaintiffs admit that while they were required to attend training sessions, they were compensated for their time. Defendants also assert that in reviewing the interrogatories of numerous opt-in Plaintiffs, a similar result is found with respect to safety meetings. Several opt-in Plaintiffs admit that they attended safety meetings and were not paid, some were paid, and yet others were not required to attend safety meetings whatsoever. Defendants assert that other opt-in Plaintiffs have indicated that they also received pay, at least for a limited time, for the same activities with which other opt-in Plaintiffs claim they did not receive any overtime pay. Defendants suggest that these facts clearly prove that there was no common decision, policy, or plan throughout Defendants that precluded overtime pay, and more importantly, demonstrates how the different employment settings of a particular opt-in Plaintiff dictated the manner with which each was paid along with the hours required to be worked. Defendants contend that such disparate facts

and employment policies will likely result in the need to call virtually hundreds of potential witnesses at trial, justifying the Court in decertifying the class.

The Court is not convinced that determining an average mileage area for a terminal area resolves the issue of deciding who falls within the class without requiring distinct proof as to each individual Plaintiff. Using an average range for a terminal area, such as 25 miles as Plaintiffs suggest, on its own, fails to indicate when compared to an employee's average miles driven whether that driver actually ever left the terminal area.[17] Rather, and as Plaintiffs concede, in order to determine whether a particular Plaintiff drove outside the terminal area, a highly individualized analysis would be required that would entail reviewing each individual Plaintiff's time and mileage entries for each completed trip for each day or shift worked for each week within the class period. A similar individualized analysis would be required to determine whether an employee drove more than 20% in a non-exempt position. In addition, the evidence proffered by Defendants suggests that pay practices were inconsistently applied as to any particular Plaintiff, thereby requiring testimony not suited to representative testimony in this case. Therefore, we must conclude that such a fact-intensive analysis weighs against maintaining certification of this collective action.

### 2. *Defenses Individual to Each Plaintiff*

Because the analysis regarding class eligibility and damages are highly fact-specific and individualized to each Plaintiff driver, Defendants' defenses as to each Plaintiff are similarly highly individualized. Defendants asserts that a number of the Plaintiffs have claimed they either received no pay for overtime, some pay, or all pay to which they were entitled. As a result, Defendants contend that they may be required to call hundreds of Plaintiffs to testify as to their claims and to

---

[17]Defendants assert that a terminal area may be up to 100 miles depending on its location.

establish that Defendants had no common plan or scheme to preclude overtime pay in violation of the FLSA. Thus, the Court agrees that this factor warrants decertification.

### 3. *Fairness and Procedural Considerations*

Fairness and procedural considerations are important when addressing whether Plaintiffs are similarly situated.[18] "The primary objectives of a § 216(b) collective action are: (1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity."[19] Defendants claim that because the facts are so individualized, it would be impossible to proceed with this action using representative testimony. As discussed, Defendants contend that hundreds of witnesses would be required to resolve the claims, and for those Plaintiffs who did not testify, there would be no basis upon which to adjudicate their individualized claims. While the Court is mindful that decertification places the opt-in Plaintiffs back to "square one," the Court must also be confident that proceeding as a class would permit the efficient resolution of the claims in one proceeding, thereby fulfilling the purpose of a § 216(b) action. Here, proceeding as a class would be anything but efficient, and ultimately, would likely result in two fairly substantial trials, one to establish liability and a second to determine damages. In this case, we are not convinced that allowing Plaintiffs to proceed in one action serves the purposes of the FLSA. Therefore, we conclude that this factor militates against maintaining class certification.

---

[18]*See Thiessen*, 267 F.3d at 1103.

[19]*Moss v. Crawford & Co.*, 201 F.R.D. 398, 410 (W.D. Pa. 2000).

**Defendant's Motion to Strike**

On November 29, 2010, Plaintiffs filed, without request or leave of the Court, a "Response Post-Hearing Memorandum." Defendants move the Court to strike Plaintiffs' Response, arguing that Plaintiffs' filing is nothing more than a surreply to the Motion to Decertify advancing new arguments. Defendants argue that Plaintiffs supplemental briefing is both untimely and in contravention of procedural rules, and as a result, should be stricken.

During the November 22, 2010 decertification hearing, the Court informed that parties that it may consider requesting additional briefing on issues concerning the 20% rule and average distance for a terminal area. The Court, however, did not request any additional briefing nor did Plaintiffs move the Court pursuant to D. Kan. Rule 15.1. Accordingly, Plaintiffs' response is striken.[20]

### IV. Conclusion

In light of the individualized and fact-intensive inquiry that will be required as discussed above, the Court concludes that decertifying the condition class is required. As discussed, this case is fraught with questions requiring distinct proof as to individual plaintiffs, such as the hours, distance driven, and position worked in any given week during the relevant class period. In addition, Defendants' defenses relating to each individual Plaintiff's claim for overtime cannot be addressed on a class-wide basis. Although the FLSA does not require potential class members to hold identical positions, the similarities necessary to maintain a collective action under § 216(b) must extend beyond the mere fact that Plaintiffs hold the same job title.[21] Otherwise, "it is doubtful

---

[20] Even if the Court were to consider Plaintiffs' post hearing memorandum, it fails to advance their argument, as the use of averages does not eliminate the need to conduct an individualized analysis for each Plaintiff in this case.

[21] *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 956 (11th Cir. 2007) (internal citations omitted).

that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse."[22] Therefore, based on the foregoing, Plaintiffs' conditionally certified class is decertified, and the remaining opt-in Plaintiffs are dismissed from this action.

**Plaintiffs Marsha Scott and Vicki Hargis**

Because the Court has decertified the conditional class, the only identified Plaintiffs in this case are Plaintiffs Marsha Scott and Vicki Hargis. However, in the Court's September 7, 2010 Memorandum and Order on Defendants' Motion for Summary Judgment, we dismissed 275 Plaintiffs who had no viable claim for overtime pay, to which Plaintiffs' counsel did not dispute.[23] Marsha Scott and Vicki Hargis were plaintiffs identified as having received one and one-half times their regular pay for any hours worked in excess of forty hours per workweek, and as such, had no sustainable claim.[24] Thus, both Plaintiffs' claims have previously been dismissed from this action, and as a result, this action is left with no Plaintiff with which to proceed. Therefore, having no Plaintiff to proceed in this action, this case is DISMISSED.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Decertify the FLSA Conditional Class (Doc. 487) is hereby GRANTED.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike (Doc. 543) Plaintiffs' Post Hearing Memorandum (Doc. 542) is hereby GRANTED.

**IT IS FURTHER ORDERED** that, all plaintiffs having been dismissed from this case and no plaintiff's remaining, the case is DISMISSED.

---

[22]*Id.*

[23]*Scott v. Raudin McCormick, Inc.*, 2010 U.S. Dist. LEXIS 79792, at *10 (D. Kan. Sept. 7, 2010).

[24]Doc. 519-17, pp.6, 7 (Defendants' Exhibit 7).

**IT IS SO ORDERED.**

Dated this 8th day of December, 2010.

                                            ERIC F. MELGREN
                                            UNITED STATES DISTRICT JUDGE